564 So.2d 1149 (1990)
Melissa PATTERSON, Appellant/Cross-Appellee.
v.
CINCINNATI INSURANCE COMPANY, Appellee/Cross-Appellant.
No. 89-3289.
District Court of Appeal of Florida, First District.
July 3, 1990.
*1150 Louis K. Rosenbloum and Robert J. Mayes of Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., Pensacola, for appellant/cross-appellee.
Jeffrey P. Gill and Carol Ann Ruebsamen of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Pensacola, for appellee/cross-appellant.
ERVIN, Judge.
Appellant, Melissa Patterson, who had filed a claim against Cincinnati Insurance Company (Cincinnati) under the uninsured motorist (UM) provisions of an automobile insurance policy Cincinnati issued to appellant's parents, Edward and Barbara Patterson, seeks review of the trial court's order granting summary judgment to Cincinnati. In so ruling, the trial court relied on the provisions of Section 627.409(1), Florida Statutes (1987),[1] and held that appellant was not a person insured under the policy Cincinnati issued to appellant's parents, because of a material misrepresentation Mr. and Mrs. Patterson made regarding their daughter's status as a driver in their household. Cincinnati cross-appealed, contending that the trial court erred by not granting summary judgment to it on the issue regarding Ms. Patterson's capacity as a member of the named insured's household, and by entering partial summary judgment in Ms. Patterson's favor on the issue of the amount of UM coverage available to her under the policy. Because we find genuine issues of material fact remain for resolution, we reverse and remand the case for trial.
Mr. and Mrs. Patterson obtained an automobile insurance policy with Cincinnati that named themselves and their son, Eric Patterson, as the drivers in the household who had access to the insured vehicles. Peter M. Perceval, the agent in charge of the Pattersons' policy, testified that he called Mr. Patterson on June 13, 1988, concerning renewal of the policy for the period from July 1988 through July 1989. He stated that although he could not remember the specific questions asked, it was his routine custom to ask the insured whether there were any additional drivers that needed to be added to the policy, and that Mr. Patterson had supplied him with the information which Perceval wrote on the renewal questionnaire form, which did not include Melissa Patterson's name as a driver.[2] Mr. Patterson, on the other hand, testified that he did not recall speaking to Perceval in June 1988.
In August 1988, Melissa Patterson, while riding a bicycle, was struck by an uninsured motorist and rendered a quadriplegic. At the time of the accident, Ms. Patterson was living in an apartment located in Ft. Lauderdale which her father rented. Both of her parents were then living in Gulf Breeze, Florida.[3] Ms. Patterson subsequently *1151 made a claim for UM benefits under her parents' automobile insurance policy, and Cincinnati denied coverage, asserting that Ms. Patterson was not a member of her parents' household.
After discovery, Ms. Patterson moved for partial summary judgment to determine the amount of UM coverage available to her under her parents' policy. The court decided that Cincinnati had failed to properly notify the Pattersons of their UM coverage options, as required by Section 627.727(1), Florida Statutes (1987). Because of the statutory violation, the court concluded that the UM coverage available under the policy would be in the same amount as the stacked bodily injury limits ($300,000), rather than the lower stacked UM coverage ($75,000) called for under the terms of the policy.
Both parties subsequently moved for summary judgment on the remaining issues of liability. The trial court determined that Ms. Patterson was a member of her parents' household, and therefore found that it was incumbent upon the Pattersons to advise Cincinnati that their daughter had access to the insured vehicles. The court concluded that because they failed to do so, the Pattersons had mispresented Ms. Patterson's status as a driver in their household when the policy was renewed. Because such misrepresentation was material to Cincinnati's acceptance of the risk, the court granted Cincinnati's motion for summary judgment and entered a final judgment, directing that Ms. Patterson recover nothing. Hence this appeal and cross-appeal.
In regard to the issues Ms. Patterson raised on direct appeal, we conclude that genuine issues of material fact exist regarding the alleged misrepresentation. Neither Perceval nor Mr. Patterson could readily recall the specifics of the alleged conversation that took place in June 1988. Because the evidence is not conclusive, the extent of the questions asked by the insurance agent, the accuracy of the answers given by the insured, and the insured's misrepresentation are questions of fact to be decided by the trier of fact. Travelers Ins. Co. v. Zimmerman, 309 So.2d 569, 570 (Fla. 3d DCA 1975). See also Preferred Risk Life Ins. Co. v. Sande, 421 So.2d 566, 570 (Fla. 5th DCA 1982); Beneby v. Midland Nat'l Life Ins. Co., 402 So.2d 1193, 1194 (Fla. 3d DCA 1981). Therefore, the order, as it relates to the misrepresentation issue, must be reversed and the matter remanded for trial.[4]
Turning next to Cincinnati's first issue raised on cross-appeal, we find a similar factual dispute exists regarding the residency issue. Although case law demonstrates that it is not essential that the insured and the person claiming under the insured's policy actually live within the same structure,[5] when the evidence may point in either direction, as in the case at bar, then it is for the trier of fact to decide the residency issue, not the court. Sutherland v. Glens Falls Ins. Co., 493 So.2d 87, 89 (Fla. 4th DCA 1986). Thus, we find no error in the trial court's decision to deny summary judgment to Cincinnati on the residency issue. Rather, this issue should be determined by the trier of fact upon remand of the case.
In regard to Cincinnati's final issue on cross-appeal  whether the trial court erred in granting partial summary judgment to Ms. Patterson on the issue of the amount of UM liability coverage  we find Northern Ins. Co. of N.Y. v. Hiers, 504 So.2d 1382 (Fla. 5th DCA), review denied, 513 So.2d 1062 (Fla. 1987), controlling. Like Hiers, the notice in the instant case was *1152 buried underneath the policy jacket at pages 26 and 27 of the policy itself. Because the notice was not attached directly to the premium notice, incorporated in the premium notice, or in a separate sheet as a stuffer,[6] the trial court correctly concluded that Cincinnati had failed to comply with Section 627.727(1), Florida Statutes (1987),[7] and that Ms. Patterson would be entitled to UM coverage in the same amount as the bodily injury limits. Therefore, the parties will be bound on remand by the trial court's ruling on the amount of UM coverage available to Ms. Patterson, should she recover.[8]
Finally, we conditionally grant appellant-Patterson's motion for attorney's fees at the appellate level, filed pursuant to Section 627.428(1), Florida Statutes (1987), if Ms. Patterson prevails on the issue of coverage after the matter is tried on remand. See Hart v. Bankers Fire & Casualty Ins. Co., 320 So.2d 485, 486-87 (Fla. 4th DCA 1975) (on rehearing).
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
WENTWORTH and MINER, JJ., concur.
NOTES
[1] Subsection (1) provides:

(1) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:
(a) They are fraudulent;
(b) They are material either to the acceptance of the risk or to the hazard assumed by the insurer; or
(c) The insurer in good faith would either not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.
[2] The renewal questionnaire specifically stated, "List all individuals with a driver's license that are members of the household and have access to the vehicles."
[3] In January or February 1988, Melissa Patterson had accompanied her father to Ft. Lauderdale where he worked during the tourist season and lived with him in the apartment. Mr. Patterson returned to his home in Gulf Breeze in April 1988; however, Melissa remained in Ft. Lauderdale.
[4] Because of our resolution of the misrepresentation issue, we need not address the merits of the second issue raised by Ms. Patterson, regarding whether the trial court erred in striking Mr. Patterson's affidavit submitted by appellant on motion for rehearing, and in denying her motion for rehearing.
[5] See, e.g., Row v. United Servs. Auto. Ass'n, 474 So.2d 348 (Fla. 1st DCA 1985); State Farm Mut. Auto. Ins. Co. v. Johnson, 536 So.2d 1089 (Fla. 4th DCA 1988); Sutherland v. Glens Falls Ins. Co., 493 So.2d 87 (Fla. 4th DCA 1986); Trezza v. State Farm Mut. Auto. Ins. Co., 519 So.2d 649 (Fla. 2d DCA 1988); Alava v. Allstate Ins. Co., 497 So.2d 1286 (Fla. 3d DCA 1986), review denied, 508 So.2d 13 (Fla. 1987).
[6] Hiers, 504 So.2d at 1384.
[7] The pertinent provisions of section 627.727(1) state:

(1) No motor vehicle liability insurance policy shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein... . The insurer shall notify the named insured at least annually of his options as to the coverage required by this section. Such notice shall be part of, and attached to, the notice of premium, shall provide for a means to allow the insured to request such coverage, and shall be given in a manner approved by the department.
(Emphasis added.)
[8] As to this issue, Cincinnati has also argued that Ms. Patterson had no standing to raise the technical deficiency in the UM notice requirements, because she is not a named insured, but rather is a permissive user. We disagree. See Quirk v. Anthony, 563 So.2d 710 (Fla. 2d DCA 1990).